Lewis Khashan, Esq. (CA SBN 275906)
KHASHAN LAW FIRM
38975 Sky Canyon Drive, Suite 201
Murrieta, CA  92563
Tel: 951-461-2387
Fax:  909-658-8981
Email: lewis@khashanlaw.com

Suzanne Skolnick, Esq. (CA SBN 211076)
SKOLNICK LAW, APLC
2170 S. El Camino Real, #215
Oceanside, CA  92054
Tel: 760-585-7092
Fax:  760-585-4676
Email:  suzanne@skolnicklawgroup.com

Attorneys for Plaintiff, John Curtis Newman, III

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CURTIS NEWMAN, III, | Case No. 2:20-cv-3173 |
| Plaintiff, | **PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS** |
| v. | |
| CITY OF OXNARD; OFFICER ROBERT CASTON; OFFICER JARED SCHMELTER; OFFICER RANDALL GONZALES; SERGEANT BRETT SMITH; and DOES 1-10, | |
| Defendants. | **JURY TRIAL DEMANDED** |

## **INTRODUCTION**

1. This action is filed by John Curtis Newman, III ("Plaintiff"), arising from events that occurred on April 7, 2018 when Officer Robert Caston ("Caston"), an Oxnard Police Department ("OPD") Officer, without reasonable basis to do so, rammed his police vehicle into Plaintiff's motorcycle using deadly force to immobilize Plaintiff's vehicle, causing Plaintiff to fall off his motorcycle and causing Plaintiff to sustain several physical injuries including, but not limited to, a broken arm, neck, back, head, and emotional injuries.  Officer Jared Schmelter, an OPD Officer ("Schmelter"); and Officer Randall Gonzales, an OPD  Officer ("Gonzales") then used further excessive force against Plaintiff when Caston and Schmelter deployed a K9 police service dog on Mr. Newman in order to bite Mr. Newman while he lay bleeding and injured in the road with a broken arm and other severe injuries to his person.  Gonzales then unreasonably used a hobble restraint on Plaintiff and twisted his fractured arm in the process of applying handcuffs.  Sergeant Brett Smith was personally present throughout the use of excessive force against Plaintiff.  City of Oxnard's policies, practices and customs as well as its failure to train, supervise and discipline officers violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution as made actionable against Defendants pursuant to 42 U.S.C. §1983.

## JURISDICTION AND VENUE

2. This action is brought by Plaintiff John Curtis Newman, III pursuant to 42 U.S.C. Section 1983.

3. This Court has jurisdiction under 28 U.S.C. sections 1331 and 1343.

4. The amount in controversy herein, excluding interest and costs, exceeds the minimum jurisdictional limit of this Court.

5. The acts and omissions complained of occurred on April 7, 2018 in the City of Oxnard, California, within the Central District of California.  Therefore, venue lies in this District pursuant to 28 U.S.C. section 1391.

## PARTIES

6. Plaintiff John Curtis Newman, III ("Plaintiff") is a resident of the State of California and resided within the jurisdiction of the State of California at all times herein alleged.

7. Defendant City of Oxnard ("City") is, and at all times herein alleged was, a municipal corporation or political subdivision organized and existing under the laws of the State of California.  The Oxnard Police Department is, and at all times herein alleged was, an agency of the City of Oxnard.

8. At all times relevant herein, Defendant Officer Robert Caston ("Caston") was employed by, and working on behalf of the Oxnard Police Department ("OPD"), and resided within the State of California.  He was a City of Oxnard

police officer who actively participated in the arrest of Plaintiff, and acted under color of law and within the scope of his agency with City of Oxnard.

9. At all times relevant herein, Defendant Officer Jared Schmelter ("Schmelter") was employed by, and working on behalf of the OPD, and resided within the State of California.  He was a City of Oxnard police officer who actively participated in the arrest of Plaintiff, and acted under color of law and within the scope of his agency with City of Oxnard.

10. At all times relevant herein, Defendant Officer Randall Gonzales ("Gonzales") was employed by, and working on behalf of the OPD, and resided within the State of California.  He was a City of Oxnard police officer who actively participated in the arrest of Plaintiff, and acted under color of law and within the scope of his agency with City of Oxnard.

11. Defendant Sergeant Brett Smith ("Smith") was a Sergeant for the OPD and at all times relevant herein, was employed by, and working on behalf of the City of Oxnard, and resided within the State of California.  Smith failed to investigate and discipline the wrongful conduct of Defendants Caston, Schmelter, Gonzales and Does 1 to 10 and failed to supervise and train Defendants Caston, Schmelter, Gonzales and Does 1 to 10, thereby ratifying, condoning and endorsing their conduct while acting under color of law and within the scope of his agency with City of Oxnard.

12. Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 – 10, inclusive, and therefore sues these defendants by fictitious names. Plaintiff is informed and believes, and based thereon alleges, that each defendant so named is responsible in some manner for the injuries and damages suffered by Plaintiff and was acting under color of law at all times herein alleged. Plaintiff will amend this complaint to state the true names and capacities of Defendants DOES 1 – 10, inclusive, when they have been ascertained.

## GENERAL ALLEGATIONS

13. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each Defendant was the agent and/or employee and/or co-conspirator or each remaining Defendant, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants.

14. The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Plaintiff.

## STATEMENT OF FACTS

15. Plaintiff realleges and incorporates by reference paragraphs 1-14 of this complaint as though fully set forth herein.

16. On April 7, 2018 at approximately 00:21 hours, Plaintiff was operating

**5**

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS   CASE NO.: 2:20-cv-3173**

his 2006 Harley Davidson motorcycle in the City of Oxnard.  He was doing so lawfully, without posing a threat to any person, nor was he committing any criminal offense or brandishing any weapon.

17. As Plaintiff was operating his vehicle, Defendants Caston, Schmelter and Does 1 to 10 began a vehicle pursuit of Plaintiff's vehicle based on the allegation that Plaintiff had switched lanes without using his turn signal.

18. Prior to the pursuit occurring, Defendant City and Smith had implemented an unconstitutional policy, practice or custom requiring officers to make arbitrary traffic stops of all individuals operating Harley Davidson motorcycles whether or not the officers had reasonable suspicion to make a traffic stop.

19. At all times relevant hereto, the alleged violation of the motor vehicle code for which Defendants Caston, Schmelter and Does 1 to 10 alleged they were pursuing Plaintiff's vehicle, constituted a minor traffic violation subject to a monetary fine.

20. Throughout the short time that Defendants Caston, Schmelter and Does 1 to 10 were pursuing Plaintiff's vehicle, Plaintiff was operating his vehicle at relatively slow speeds on streets that had little to no traffic.

21. Shortly after Defendants initiated the vehicle pursuit, and without any reasonable basis for doing so, Defendant Caston rammed the police vehicle into

the Plaintiff's motorcycle using a so-called "Pursuit Intervention Technique" (PIT), designed to cause the operator of the vehicle to lose control of the vehicle.

22. At all times relevant hereto, the PIT maneuver or ramming technique should only be used when the use of "deadly force" is required and/or justified under the circumstances. According to OPD policy, a verbal warning should precede the use of deadly force.  Before a PIT or ramming is used, OPD policy requires an officer to obtain approval of a supervisor.  Plaintiff alleges on information and belief that no prior supervisor approval was obtained before Defendant Caston rammed Plaintiff's motorcycle, notwithstanding that Defendant Sergeant Brett Smith was available via radio contact at all times during the pursuit for the requisite supervisor approval to occur.

23. Pursuant to OPD policy, ramming a vehicle should be done only after other reasonable tactical means at the officer's disposal have been exhausted. OPD policy provides that ramming should be reserved only for situations where there is no other reasonable alternative method to stop a fleeing vehicle.  At the time of the incident, no other reasonable alternatives were attempted or used, despite their availability to Defendants.

24. At all times relevant hereto, Defendant Caston did not have reason to believe, nor was there any basis in fact for to him to use deadly force in connection with his pursuit of Plaintiff's vehicle on an alleged minor traffic

offense/violation.

25. Defendant Schmelter was the front-seat passenger in the vehicle driven by Defendant Caston and participated and assisted Defendant Caston in the illegal stop of Plaintiff.

26. When the Plaintiff's vehicle was rammed into by Defendant Caston's police vehicle, Plaintiff lost control of his motorcycle, causing him to crash to the ground, resulting in severe physical injuries to Plaintiff.

27. As Plaintiff was laying injured, bleeding, and helpless in the road with a broken arm and other injuries, Plaintiff posed no threat to Defendant police officers and was not brandishing any weapon.  His hands were gloved but visible to officers at all times.

28. Nonetheless, Defendants Caston and Schmelter immediately exited the police vehicle and released the police dog "Koa" on Plaintiff, ordering Koa to attack and bite Plaintiff.  Koa then began biting Plaintiff viciously over numerous parts of his body.

29. While Koa was attacking Plaintiff, at least 6 other officers responded to the scene directly next to Plaintiff.  One officer also had a taser pointed at Plaintiff while Koa bit Plaintiff's body while he lay on the ground.

30. Ordering Koa to attack Plaintiff while he lay injured in the road with a severely broken arm and while he posed no threat to Defendant officers was an

unreasonable and excessive use of force.

31. OPD policy requires specific factors to be present before a canine may be used to apprehend a suspect.  The policy provides that in the absence of those specific factors, mere flight from a pursuing officer shall not serve as a basis to use the canine to stop a suspect.  At the time that the K-9 Koa was deployed to attack Plaintiff, Defendants had no reasonable belief that Plaintiff posed an imminent threat of violence or serious harm to the public or officers because Plaintiff was bleeding with a broken arm laying in the road incapacitated from being struck on his motorcycle.  At the time the K-9 was deployed, Plaintiff was not resisting or threatening to resist arrest, nor was Plaintiff in a concealed area. Plaintiff was on the ground of an intersection within full view of all the responding officers and screaming that his arm was broken.  The deployment of Koa was unreasonable, in violation of OPD policy and an unjustified use of excessive force.

32. Defendants Caston and Schmelter violated the K-9 use policy in various ways, including, but not limited to:  not keeping Koa on a leash; by failing to make a clearly audible warning announcing the use of the canine in the moment before Koa was let out of the police vehicle to attack Plaintiff on the ground; by failing to allow any time to determine if the canine was even necessary before deploying Koa; and by failing to advise Sergeant Brett Smith, the on-scene

**9**

supervisor of their decision to deploy Koa before Koa's deployment.

33. According to Defendant Gonzales' report, he was the officer who handcuffed Plaintiff.  At the time that Plaintiff was being handcuffed, his arm was broken from being struck off his motorcycle and thrown to the ground.  He was in extreme pain from the broken arm and the police dog biting his back.  Plaintiff was visibly bleeding at the scene. Plaintiff was complying with the responding officers' commands, did not demonstrate any resistance to the officers and was not a threat to any of the officers.  Nevertheless, Defendant Gonzales then twisted Plaintiff's arm roughly behind his back in order to handcuff him.  Hobble restraints were then applied to Plaintiff's ankles while he lay face down on the road.  Plaintiff is informed and believes and based thereon alleges that Defendant Schmelter and Does 1 to 10 also participated in applying the handcuffs and hobble restraint to Plaintiff and several unknown officers Does 1 to 10 applied the force of their body weight on Plaintiff's upper back/neck while he was being handcuffed, hobbled and laying face down on the pavement.  Throughout the deployment of Koa, the handcuffing, hobbling and use of body weight on Plaintiff, Sergeant Smith was present and witnessed the various uses of force on Plaintiff.

34. Defendants Caston, Schmelter, Gonzales, Smith and Does 1 to 10 knew that Plaintiff was bleeding badly and required medical attention.

35. Plaintiff repeatedly told Defendants at the scene that he was hit by the police car and did not simply "fall" off his motorcycle.  Plaintiff is informed and believes and based thereon alleges that Defendants Caston, Schmelter, Gonzales, Smith and Does 1 to 10 either heard or learned from other officers at the scene that Plaintiff said he was  hit by the police vehicle.

36. The type and amount of force Defendants Caston, Schmelter, Gonzales, Smith and Does 1 to 10 used against Plaintiff, as described above, was not justified, nor lawful, under the circumstances.

37. At the time of the above-described violations, Defendants Caston, Schmelter, Gonzales, Smith and Does 1 to 10 were close by and/or were aware of the conduct of others and, therefore, were in a position to stop or prevent the tortious, unlawful and constitutionally violative conduct by each of the others, but failed to do so, despite having a duty to intervene to prevent such unconstitutional conduct.

38. In his capacity as Supervisor, Defendant Sergeant Smith failed to properly supervise Defendants Caston, Schmelter, Gonzales, and Does 1 to 10 at the scene of the above-described violations and failed to prevent the unconstitutional acts of said Defendants, thus rendering Defendant Smith liable based on his own acts and/or omissions.

39. Defendants Caston, Schmelter, Gonzales, and Does 1 to 10  with the

**11**

ratification of Defendant Smith, attempted to secure criminal charges against Plaintiff with the hope that Plaintiff would incur a criminal conviction so that they could try to shield themselves from civil liability for the injuries they inflicted.

40. At all material times, the actions and omissions of Caston, Schmelter, Gonzales, Smith and Does 1 to 10 were intentional, and/or wanton and /or willful, and or reckless and/ or callous, and/or malicious and/or deliberately indifferent to Plaintiff's rights.

41. On information and belief, Defendant City of Oxnard's ("City") police department failed to thoroughly interview independent witnesses at the scene; failed to preserve video evidence of the PIT that was collected by City's police department officers from a nearby restaurant on the night of the incident; failed to investigate the conduct of Defendants Caston, Schmelter, Gonzales and Does 1 to 10; failed to discipline Defendant Caston for using excessive and deadly force against Plaintiff by ramming Plaintiff's motorcycle with Defendant Caston's police vehicle and deploying the K-9 Koa; failed to discipline Defendants Schmelter and Gonzales for their participation in the illegal seizure of Plaintiff and their use of excessive force against Plaintiff during the seizure; failed to collect and preserve evidence concerning damage to Defendant Caston's vehicle from the ramming incident; failed to properly download and preserve event data recorder evidence from Defendant Caston's vehicle; and otherwise covered up and

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS   CASE NO.: 2:20-cv-3173**

ratified the illegal conduct of its various officers.

42. The actions of the individual Defendant officers were taken pursuant to the policies, practices and customs of the OPD, including, but not limited to, the City's motorcycle stop policy, the use of excessive force, and the use of deadly force in encounters with civilians when it is a grossly disproportionate response to a situation.

43. Despite their knowledge of these illegal policies and practices, City, Smith and Does 1 to 10 have maliciously and with deliberate indifference taken no effective steps to terminate the policies and practices; have not effectively disciplined or otherwise properly supervised the officers who engage in the policies and practices; have not effectively trained Oxnard police officers with regard to the proper constitutional and statutory limits of the exercise of their authority; and have sanctioned the policies and practices through their deliberate indifference to their detrimental effect on the constitutional rights of local residents.

44. Knowing of civil rights abuses by the individual Defendant officers named herein, Defendant Sergeant Brett Smith ratified the acts publicly and failed to remedy those systemic violations knowingly and with deliberate indifference.

## DAMAGES

45. As a direct result of Defendants' acts/omissions as herein before

described, Plaintiff suffered physical injuries for which he required medical care and for which he may continue to require medical care in the future; Plaintiff has incurred medical expenses, and may continue to incur such medical expenses for the care and treatment of the injuries he suffered; Plaintiff has experienced pain and suffering both in the past and will likely incur in the future; Plaintiff has suffered lost wages and/or loss of earning capacity both past and future; and Plaintiff suffered emotional distress, embarrassment and humiliation, including that he suffered emotional harm from the intentional infliction of emotional distress both in the past and anticipated in the future.

46.  As a direct result of Defendants' conduct herein before described, Plaintiff suffered a violation of his rights under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and/or the use of unreasonable and excessive and/or deadly force and a violation of his rights under the Fourteenth Amendment to the United States Constitution in that Defendant's conduct rose to the level of deliberate indifference and/or conscious shocking behavior.

47. Plaintiff found it necessary to engage the services of counsel to vindicate his rights under the law.  Plaintiff is therefore entitled to an award of all attorneys' fees and litigation costs incurred in pursuing this action for violation of civil rights.

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS   CASE NO.: 2:20-cv-3173**

## CLAIMS FOR RELIEF
### First Claim For Relief
### Deprivation of Civil Rights - 42 U.S.C. §1983
### By Plaintiff Against Defendants Caston, Schmelter, Gonzales, Smith and Does 1-10, inclusive.

48. Plaintiff realleges and incorporates by reference paragraphs 1-47 of this complaint as though fully set forth herein.

49. Defendants Caston, Schmelter, Gonzales, Smith and Does 1 to 10 inclusive, acting under color of state law, committed wrongful acts which proximately caused Plaintiff injuries.  Said wrongful acts included, among others:

    a.  Defendant Caston intentionally rammed Plaintiff's motorcycle thereby throwing him to the ground;

    b.  Defendants Caston and Schmelter used excessive force on Plaintiff by deploying Koa in violation of Oxnard PD policy when Plaintiff was injured, helpless and posed no threat to any person;

    c.  Defendant Schmelter participated in the ramming of Plaintiff's motorcycle with the police vehicle driven by Defendant Caston;

    d.  Defendants Schmelter, Gonzales and Does 1 to 10 inclusive, participated in handcuffing Plaintiff, wrenching his arm painfully when it was obvious his arm was broken and bleeding and while Plaintiff was also being viciously bitten by Koa;

    e.  Defendants Schmelter, Gonzales and Does 1 to 10 inclusive, also

participated in applying hobble restraints on Plaintiff in violation of

Oxnard PD policy while Plaintiff was already handcuffed and injured

from dog bites inflicted by Koa;

f.  Defendants Caston, Schmelter, Gonzales, Smith and Does 1 to 10
inclusive, failed to intervene to prevent the use of excessive force against
Plaintiff by each of said Defendants despite having the opportunity and
means to do so.

50. When Plaintiff was laying on the ground after rammed by the police

vehicle, Plaintiff did not resist or pose a threat to the safety of Defendants Caston,

Schmelter, Gonzales, Smith and Does 1 to 10.

51. Defendants, and each of them, deprived Plaintiff of his rights under the

United States Constitution to be free from the use of excessive force by law

enforcement, punishment without due process and unlawful stop, search and

seizure without reasonable suspicion, probable cause and due process.

52. Each of said Defendants were integral participants in the use of

excessive force, punishment without due process, unlawful stop, search and

seizure without reasonable suspicion, probable cause and due process against

Plaintiff.

53. Defendants Caston, Schmelter, Gonzales, Smith and Does 1 to 10 failed

to intervene and to protect Plaintiff, despite witnessing the excessive force

employed by other Defendants and despite having the ability to intervene to halt

this unconstitutional conduct.  Their refusal to intervene violated their constitutional and moral duty to protect and serve the public and Plaintiff in particular.

54. These acts resulted in injury to Plaintiff.  By these acts, the defendants violated Plaintiff's constitutional rights to be free from the use of excessive force by law enforcement, punishment without due process of law, cruel and unusual punishment, and all rights guaranteed under the Fourth and Fourteenth Amendments.

55. Defendants' knew that the use of excessive force in these circumstances was illegal under clearly established law.

56. Defendants Caston, Schmelter, Gonzales, and Does 1 to 10 used excessive force as alleged above against Plaintiff with a purpose to cause harm that is unrelated to the legitimate use of force.  The force was used to make Plaintiff suffer and to punish him.

57. The force used was unreasonable and performed with deliberate indifference to the safety and welfare of Plaintiff.  The ramming of Plaintiff's vehicle and subsequent deployment of the K-9 service dog Koa as well as the twisting of Plaintiff's broken arm when handcuffing him and hobbling Plaintiff were objectively unreasonable and no reasonable officer would have considered such use of force to be justified, thereby violating Plaintiff's Fourth Amendment

guarantee to be free from unreasonable seizures.

58. The conduct alleged herein violated Plaintiff's rights alleged above which has legally, proximately foreseeably and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering and further general and special damages according to proof at the time of trial.

59. The conduct alleged herein also amounts to oppression, fraud or malice within the meaning of Civil Code Section 3294 and was performed knowingly, intentionally, maliciously, amounting to despicable conduct by reason of which Plaintiff is entitled to an award of exemplary damages against these defendants in an amount according to proof at the time of trial in order to deter the defendants from engaging in similar conduct and to make an example by way of monetary punishment.  Plaintiff is entitled to attorney fees and costs of suit herein pursuant to statute.

**Second Claim For Relief**
**Failure to Properly Train, Supervise and Discipline & *Monell* Liability for**
**Unconstitutional Policy, Practice & Custom**
**42 U.S.C. § 1983**
**Against City, Smith and Does 1 to 10.**

60. Plaintiff realleges and incorporates by reference paragraphs 1-59 of this complaint as though fully set forth herein.

61. Defendants City, Smith and Does 1 to 10 established a practice, policy, or custom which directly and proximately caused the injuries and harm suffered

by Plaintiff, as stated more fully throughout this complaint by:

a. Instituting an unconstitutional policy, practice or custom that required officers to initiate traffic stops of all individuals driving Harley Davidson motorcycles whether or not the officer had any reasonable suspicion to make the stop;

b.  Training, instructing, encouraging, or expecting its police officers to enforce the motorcycle stop policy in any way its officers deemed fit, without regard to the constitutional rights of citizens in general or Plaintiff in particular to be free from unreasonable seizures;

c.  Failed to maintain adequate and proper training for police officers in the department necessary to educate the officers as to the constitutional rights of citizens and arrestees; to prevent the consistent and systematic use of excessive force by arresting officers; and to prevent the excessive force and extra judicial punishment of potential arrestees by officers;

d.  Failing to properly screen and review the police officers' conduct with respect to continued employment after an officer engages in unconstitutional misconduct;

e.  Failing to adequately investigate, supervise and discipline offending officers for their unconstitutional conduct, including their use of excessive force against arrestees.

62. Defendants City, Smith and Does 1 to 10 knew or should have known of the propensities of its police officers in general, and these defendant officers in particular, to use excessive force upon arrestees; and by failing to adequately train and supervise its officers, City, Smith and Does 1 to 10 failed to adequately discourage its officers form violating the constitutional rights of citizens in general and Plaintiff in particular.

63. As a result of the above described practice, policy, or custom, police officers of the City of Oxnard, including Defendants Caston, Schmelter, Gonzales and Does 1 to 10, believe that their actions would not be properly monitored by supervisors and that misconduct would not be adequately investigated or sanctioned. Instead, it would be tolerated.

64. Defendant City's practice, policy, or custom as set forth more fully above, and Defendant City, Smith and Does 1 to 10's failure to train, supervise, discipline, investigate and screen employees were the moving force that did deprive Plaintiff of his rights secured under the Constitution and laws of the United States and 42 USC §1983.

65. The failure of the Defendants City, Smith and Does 1 to 10 to properly train Oxnard PD officers in the use of force against arrestees and in procedures to avoid inflicting excessive force on arrestees was done with deliberate indifference to the Constitutional rights of arrestees, including Plaintiff, and done with

conscious disregard for the dangers of harm and injury to the Plaintiff and others similarly situated.

66. Due to the acts of Defendants, the failure to properly screen and review the police officers' conduct and the continued employment of the defendant police officers present a clear and present danger to the residents of the County of Ventura.

67. The lack of adequate screening and hiring/firing practices by the Defendants evince a deliberate indifference to the rights of Plaintiff and others in his position.

68. These Defendants failed to provide adequate training and supervision to police officers that hold the power, authority, insignia, equipment and arms entrusted to them.  Defendants failed to promulgate and enforce adequate policies and procedures related to alternatives to the use of deadly force.

69. Said custom, practice and policy included a failure to adequately investigate, supervise and discipline offending officers which fostered the custom, practice and policy within the OPD which resulted in the above-pled injuries to Plaintiff.

70. Therefore, these Defendants, with deliberate indifference, disregarded a duty to protect the public from official misconduct.

71. The failure to promulgate or maintain constitutionally adequate policies

regarding training, investigation, supervision and discipline was done with

deliberate indifference to the rights of Plaintiff and others in his position.

72. The conduct alleged herein violated Plaintiff's rights alleged above

which has legally, proximately foreseeably and actually caused Plaintiff to suffer

physical injury, emotional distress, pain and suffering and further general and

special damages according to proof at the time of trial.

**Third Claim for Relief**
**Deprivation of Civil Rights – 42 U.S.C. § 1983**
**(Supervisory Liability)**
**Against Defendant Smith and Does 1 to 10, inclusive.**

73. Plaintiff realleges and incorporates by reference paragraphs 1-72 of this

complaint as though fully set forth herein.

74. Smith and Does 1 to 10, inclusive, while acting under color of law,

exercised supervisory and disciplinary authority over the police department

officers, including Caston, Schmelter, Gonzales and Does 1 to 10.  Smith and

Does 1 to 10, inclusive, knew or should have known of Caston, Schmelter,

Gonzales and Does 1 to 10's misconduct in using excessive force against Plaintiff

because Smith and Does 1 to 10 were present at the scene and witnessed Koa

attacking Plaintiff; witnessed the handcuffing and hobble restraint applied to

Plaintiff while he lay injured on the ground from being deliberately knocked off

his motorcycle by a police vehicle; and knew or should have known based on

Plaintiff repeatedly telling officers at the scene that Plaintiff was hit by the police vehicle and did not merely "fall" off his motorcycle.

75. Smith and Does 1 to 10 had a duty to investigate Plaintiff's statements that he was struck with the police vehicle; had a duty to investigate and secure evidence in that regard; had a duty to supervise officers while they applied force to ensure that officers' use of force was reasonable under the circumstances; and had a duty to discipline the involved officers for their use of excessive force.

76. Smith and Does 1 to 10 failed to investigate the ramming of Plaintiff's motorcycle by a police vehicle; failed to discipline the involved officers for their use of excessive force against Plaintiff; and failed to train or re-train Defendant officers in their use of force techniques including, vehicle pursuits, restraints and K-9 deployment.

77. Based on the foregoing, Smith and Does 1 to 10's acts/omissions ratified, approved and encouraged Caston, Schmelter, Gonazales and Does 1 to 10 and others to continue to violate the Constitutional rights of citizens.

78. In failing to carry out appropriate supervision over his subordinates, and by acquiescing in Caston, Schmelter, Gonazales and Does 1 to 10's wrongful conduct against Plaintiff, Smith and Does 1-10 were aware that the constitutional rights of Plaintiff were being violated. Smith and Does 1 to 10's failure to supervise was the moving force behind the misconduct of Defendants Caston,

Schmelter, Gonazales and Does 1 to 10's actions in violating Plaintiff's Fourth Amendment and Fourteenth Amendment rights under the U.S. Constitution.

79. In doing the foregoing acts/omissions, Smith and Does 1 to 10 acted with deliberate indifference to, and in reckless disregard of, Plaintiff's constitutional rights and Plaintiff sustained injury and damage as alleged herein in an amount to be proven at trial.

80. The conduct alleged herein also amounts to oppression, fraud or malice within the meaning of Civil Code Section 3294 and was performed knowingly, intentionally, maliciously, amounting to despicable conduct by reason of which Plaintiff is entitled to an award of exemplary damages against these defendants in an amount according to proof at the time of trial in order to deter the defendants from engaging in similar conduct and to make an example by way of monetary punishment.  Plaintiff is entitled to attorney fees and costs of suit herein pursuant to statute

## **PRAYER**

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

a. General damages, including emotional distress, according to proof at the time of trial;

b. Special damages according to proof at the time of trial;

c. Any further declaratory relief as this Court deems just;

d. Prejudgment interest;

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS   CASE NO.: 2:20-cv-3173**

e. Costs of suit incurred herein; and

f.  Attorneys' fees;

g. Exemplary damages.

## <u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff respectfully demands that the present matter be set for a jury trial.

Dated:  April 6, 2020          \s_____
                               Lewis Khashan, Esq.
                               Attorney for Plaintiff John Curtis Newman, III

Dated:  April 6, 2020          \s_____
                               Suzanne Skolnick, Esq.
                               Attorney for Plaintiff John Curtis Newman, III

PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS   CASE NO.: 2:20-cv-3173